Frank Bisignano, Acting Commissioner of Social Security. Mr. Schiff, good morning. May it please the Court, Jim Schiff on behalf of the plaintiff Michael Lincoln. This is a Social Security disability case in which the administrative law judge made several errors. We are contending that the administrative law judge failed to weigh evidence pertaining to Mr. Lincoln's use of a cane for ambulation and balance, as well as fatigue resulting from the medications used to treat his prostate cancer. We are also contending that the ALJ failed to follow the requirements of 20 CFR 404-1520C in evaluating the supportability and consistency of nurse practitioner Jackson's opinion. And finally, we are contending that the ALJ's evaluation of Mr. Lincoln's symptoms was patently wrong. In this case, the ALJ ignored significant evidence establishing that Mr. Lincoln required a cane for ambulation and balance, and his failure to consider that evidence directly affected the outcome of this case. If the ALJ had found that he required a cane for ambulation and balance, he could not return to his past relevant work as a bus driver as he performed the position, and a finding of disability would result. Social Security Ruling 96-AP states that the ALJ's residual functional capacity finding must be based on all relevant evidence in the case record, including medical signs and laboratory findings, recorded observations, and medical source statements. The ALJ mentioned Mr. Lincoln's reports to the consultative examining physician in 2020 that he used a cane occasionally for balance while arising from a seated position, and the ALJ also referenced a March 2022 exam where Mr. Lincoln was observed to use a cane, but the ALJ did not discuss examinations from March, May, and August of 2021 where he was observed to walk with a cane, and in particular, the August 2021 examination showed not only that he used a cane, but his balance was unsteady without it. This evidence the ALJ did not discuss undermines his conclusion that there was, quote, no indication that Mr. Lincoln required a cane on an ongoing basis. While an ALJ is not required to discuss every piece of evidence, he could not ignore an entire line of evidence that is contrary to his ruling, and we are contending that that is what happened here. The 2021 examinations the ALJ failed to mention establish a pattern of cane use, and if the ALJ had considered this evidence, he may have found Mr. Lincoln incapable of returning to his bus driver position and light work in general. The bus driver position required him to lift the hood of the bus for inspections and open and close cargo doors. A person who relies on a cane for balance would not be able to use both arms to perform these actions. The ALJ also acknowledged that Mr. Lincoln's fatigue reasonably arose from his cancer treatments, but found that his fatigue would still allow him to perform light work because he did not appear to undergo treatment specifically for fatigue, but the ALJ was mistaken on this point. As his oncologist, Dr. McVicker, advised him to maintain good nutrition, hydration, and exercise, and the agency recognizes these methods as treatment under the ruling, Social Security Ruling 16-3P. The ALJ must consider treatment other than medication the individual receives or has received for relief of symptoms in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. The ALJ did not comply with the ruling in this respect because of the way Mr. Lincoln described how his fatigue affects him, which was that it interfered with his ability to stay awake, he required a two- to three-hour nap every day, he was precluded from standing for more than 15 minutes at a time, and he had difficulty driving a car, and there's testimony in this case the ALJ did not evaluate in which he stated that he has trouble maintaining a driving position, staying in the correct lane, that his wife was always yelling at him for swerving in and out of lanes, and importantly here the judge found that he could go back and do a position in which he is expected to transport students safely to and from school and sporting events, so any interference with his ability to drive is certainly relevant in this case. We are also contending that the ALJ did not comply with the regulation in evaluating the opinion of nurse practitioner Jackson, and one of the things that the ALJ drew an incorrect conclusion about was the ALJ said that the opinion seemed to be based on statements Mr. Lincoln had given to nurse Jackson as opposed to objective evidence, but nurse Jackson clearly identified support for her opinion on the opinion form itself. She stated that objective evidence supporting it was hardness at the left base of the prostate, a PSA level of 35.8, and a prostate biopsy that showed prostate cancer. Well, his cancer diagnosis is accepted by all, including the ALJ here, so the fact that the nurse practitioner, who is the only one apparently whose report favored a finding of disability, the fact that she noted his cancer diagnosis doesn't really move the needle. Well, Your Honor, in addition to the actual objective findings, the laboratory findings, the nurse did identify his symptoms. As reported by him, which is what the ALJ said, that she relied heavily on his own reports rather than any other objective or clinical evidence of fatigue, ambulation problems, etc. Well, this is an interesting situation because the administrative law judge credited the fact that he would have fatigue from the cancer treatments, but then said that there's other evidence that the fatigue would not limit him or preclude him from performing a bus driver position. But once she credited the existence of the fatigue, she had to look at the—I'm sorry, once he credited the existence of the fatigue, the administrative law judge had to consider what are the resulting work limitations from that fatigue. And that's where the ALJ's analysis stopped. The judge did not consider, well, if someone's fatigued, do they have to take a nap? Are they going to be having issues with concentrating or paying attention to the road? And in this case, the administrative law judge also found that Mr. Lincoln had mild limitations in concentration, persistence, or pace solely resulting from depression and anxiety. So when you combine the fatigue that results from the cancer treatments and the fatigue and the limitations resulting from the mental impairments, you have a picture of someone whose fatigue caused significant work-related limitations the ALJ did not account for. In addition, in this case, the ALJ found that Mr. Lincoln's symptoms could not be accepted as consistent with the record because he only occasionally complained of fatigue. And we submit that that was inaccurate because Mr. Lincoln complained of fatigue or tiredness at 21 separate medical visits to five different doctors and physical therapists. So from this decision, it is not clear what the ALJ was expecting in terms of Mr. Lincoln's complaints. What frequency of complaints would have better substantiated his allegations? And so we are contending, based on the three errors I identified, that the administrative law judge's decision was not supported by substantial evidence, and this court should reverse. I'll save the remainder of my time for rebuttal. Thank you. That's fine. Thank you. Mr. James. May it please the Court. Good morning, Your Honors. Mr. Schiff. Your Honors, I'm Daniel Robert James on behalf of the Commissioner. Your Honors, this case had not only an initial review and a reconsideration review, but a special third assessment called a quality review. And in those assessments, all three doctors reached the same conclusion, agreeing that Lincoln could perform light work. The ALJ adopted this conclusion. The ALJ presented this light work hypothetical to a well-credentialed vocational expert who justified indeed that Lincoln could not perform his more taxing work as a truck driver, but that he could perform his past relevant work as a school bus driver. In making these findings, the ALJ considered the whole record, including that Lincoln suspected he might have cancer and unfortunately tested positive for cancer. But Lincoln quickly began treatment, and thankfully his conditions improved. Several months into treatment, his prostate-specific antigen levels were normal, and his condition was relatively stable within a year. The ALJ noted that during this treatment that Lincoln was active. The ALJ pointed to household chores and caring for pets. In February of 2020, Lincoln reported that he spent 90% of his day running an eBay store, and in June of 2020, he mowed two acres. The ALJ reasonably discounted Lincoln's statements based on these inconsistencies. The chief argument made by counsel is that Lincoln required a cane and that he used this cane whenever he left the house, but that simply was not borne out by the record. The ALJ properly found instead that Lincoln did not consistently use a cane on an ongoing basis. Indeed, there were significantly more occasions where Lincoln showed a normal gait or normal findings than there were when he used a cane, and cane use was not consolidated to one single point in time. It was throughout the record he would have a normal gait, he might use a cane one month, and then follow two months where there was a normal gait. Can I interject and ask you something that was not anyone's focus, but the ALJ at a certain point notes that Nurse Jackson found that Mr. Lincoln was likely to be absent from work about four days per month on average as a result of his treatment or impairment. Whatever happened with that piece of information? That's once a week. Yes, Your Honor. The ALJ considered that and considered the other findings of Nurse Jackson as well, which were very extreme in comparison to the other opinions, including that Lincoln could sit less than two hours, that he needed to lie down throughout the day. The ALJ gave valid reasons for breaking with this opinion. First was that Nurse Jackson conflicted with every other doctor of record. As mentioned, there were three reviews, and all three doctors found that Mr. Lincoln could perform light work, while Nurse Jackson disagreed and found that he could perform not even sedentary work, well below sedentary with the absences that Your Honor mentioned. Nurse Jackson's opinion was inconsistent with Lincoln's own statements. Nurse Jackson said that Lincoln could lift only 10 pounds, and the very next day Lincoln told his consultative examiner that he could lift 20 pounds. Nurse Jackson clashed with a treating doctor who was treating Lincoln's primary care physician over a handicapped parking placard, where Nurse Jackson said he qualified, but Dr. Dumetrescu found clearly that he did not. So the ALJ faced a predicament where it was to either go with the three consistent opinions of the record, or to break with those three opinions of the doctors and go with Nurse Jackson when Nurse Jackson was inconsistent internally. As the ALJ pointed out, notes from that same day when Nurse Jackson gave the opinion, her examination was relatively normal and didn't contain the type of findings that would be consistent with four monthly absences. As well as Lincoln's own statements and the opinions of the other three doctors. The same that was true with the cane is also true of fatigue, where as opposed to making consistent claims of fatigue, Lincoln regularly told his doctors that he was up and active each day. At times he said even though he had fatigue, it did not interfere with his daily activities. He reported baseline energy at times, and he told doctors that his anemia improved with treatment. What this breaks down to is a substantial evidence standard review. Here we need to show that a reasonable fact finder could agree with the ALJ, and certainly the opinions of three doctors coupled with Lincoln's activities and spending 90% of his day running the eBay store and mowing two acres was enough to back the ALJ's decision. We argue that it was. Here we have a case where the ALJ was more persuaded by the consistent opinions by the non-examining physicians, as opposed to this nurse who actually saw Mr. Lincoln. A layperson may think that the person who examined, the medical professional who examined the claimant, their opinions ought to have more weight. But that's not quite consistent with our law, is it, our case law? That's correct, Your Honor. The law actually somewhat recently changed to where I think it was 2017. We used to favor the treating status over the examining or reviewing status. Now the two factors that are most important are supportability, meaning the doctor or nurse makes a statement on how well he or she supports that with citing to evidence, and then the consistency with the overall record. And here the ALJ pointed out that Nurse Jackson's opinion lacked both. The same day that she said that, as Your Honor mentioned, four absences, the findings from those notes were normal. There was nothing really that stood out in those notes with a normal examination. The same was true of consistency. You have three opinions from three doctors who reviewed the record at different times, and her own conclusions conflict with those of Lincoln's statement, saying Nurse Jackson finding that he could lift only 10 pounds, and Mr. Lincoln telling the consultative examiner that he could lift 20 pounds. And Nurse Jackson also clashed again with the treating doctor over the handicap placard. So based on all those, the ALJ decided to go with the opinions of the three doctors who were consistent with one another and were consistent with the evidence in Lincoln's activities over that of Nurse Jackson. And unless Your Honors have any questions, we ask that you affirm the decision. Thank you. Thank you. Mr. Schiff, anything further? To respond to the Commissioner's points, I want to first alert the Court to a change in administration policy. As of June 2024, the Social Security Administration is now considering work done within the last five years of the date of adjudication or five years of the date last insured as past relevant work. If this case were remanded, Mr. Lincoln is virtually certain to win the case because he last performed the school bus driver position in November of 2011, which is well beyond the five-year look-back period the agency now considers relevant. Also to respond to the substance of the Commissioner's argument, the Commissioner is ascribing a lot of analysis to the ALJ's decision, which did not actually take place. All the administrative law judge said about the state agency opinions was that they were consistent with each other and they were consistent with the post-reconsideration production of evidence. None of the state agency physicians discussed Ms. Jackson's opinion, and the administrative law judge provided no rationale for why those opinions were accurate. And on that basis, the supportability and consistency prongs of the regulation were not satisfied. And turning back to the issue of the cane, the Commissioner is also engaging in post-hoc rationalization by supplying evidence that the judge did not consider or mention as evidence that Mr. Lincoln did not require a cane. The key here is that Mr. Lincoln used a cane in 2021 on three occasions and was observed to do so, and the administrative law judge didn't mention that. Because of that, the administrative law judge's decision was not supported by substantial evidence, and we ask this Court to reverse. Thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement. And that concludes the Court's calendar for today. We are in recess. Thank you.